IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JAMES W. CHAMBERS, JR.<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CIVIL ACTION FILE<br><br>NO. 1:14-CV-3761-TWT-GGB |

# FINAL REPORT AND RECOMMENDATION

I.  **Procedural History**

James w. Chambers, Jr. ("Plaintiff" or " Chambers") protectively filed an application for supplemental security income on January 3, 2012 alleging disability since January 1, 2009. (Tr. 65, 127-132). After a hearing, in a decision dated June 12, 2013, an Administrative Law Judge ("ALJ") found Chambers not disabled. (Tr. 21-29). Chambers requested review of the ALJ's decision by the Appeals Council and the Appeals Council denied review. (Tr. 1-3). This case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Facts**

Plaintiff was fifty-four years old at the time of the ALJ's decision. (Tr. 29, 127). Plaintiff had a high school education (Tr. 149) and had worked in the past as

a welder. (Tr. 61, 149). Plaintiff alleged disability due to hip, shoulder and arm problems, and asthma. (Tr. 127, 148).

### A. Medical Evidence

On May 19, 2010, Plaintiff went to Rockdale Medical Center with a chief complaint of a sore throat. (Tr. 222). He was discharged the same day in an improved condition with several prescriptions. He was advised to stop smoking. (Tr. 226). A CT scan showed "1 cm diameter paraseptal emphysema" in his lungs which was described as "minimal changes of central lobular emphysema." There were "minimal osteophytes of the thoracic vertebrae indicative of degenerative disc disease." (Tr. 228). There were no other pulmonary problems or acute abnormalities. (Tr. 227-9).

On May 28, 2010, Plaintiff presented to Rockdale Medical Center with hip and leg pain. (Tr. 230). He reported that he slipped and fell in his bathroom, landing on his hip. (Tr. 230). He reported a left hip fracture in 1989. (Tr. 230). He was able to ambulate on the left leg but he reported that his severity of pain was 8 out of 10. (Tr. 230). Plaintiff was diagnosed with bone cyst and sprain/strain of hip. (Tr. 233). A CT of the left hip showed bilateral sacroiliitis and degenerative spurs; degenerative disk space disease at L5-S1; and suggestions of an aneurysmal bone

cyst. (Tr. 236). Radiology reports of the left hip and pelvis showed mild to moderate narrowing of bilateral hip joints. There were no acute or aggressive abnormalities. (Tr. 237).

An August 15, 2010, a chest x-ray showed hypoventilation without acute infiltrate and chronic posttraumatic changes in the right shoulder. (Tr. 243). In an August 16, 2010, cardiac stress test, James Abraham, M.D., observed shortness of breath after nine minutes, likely related to heavy tobacco abuse. (Tr 240). Full cardiac evaluation was negative. (Tr. 241). On August 16, 2010, an EGD was performed. The doctor's impression was a 4 cm. hiatal hernia, gastric ulcer and duodenal ulcer. (Tr. 241).

On December 24, 2011, Plaintiff presented to the Newton Medical Center Emergency Room with hip pain resulting from trying to break up a dog fight. (Tr 282-83). Gobind Singh, M.D., observed that Plaintiff moved his torso very well as he described what happened. Dr. Singh prescribed Lortab and Flexeril for pain and spasms. (Tr. 284). Plaintiff was discharged in satisfactory condition. (Tr. 285).

On February 14, 2012, consultative examiner Melvin E. Glover, M.D., evaluated Plaintiff for his disability claim. Plaintiff reported being in a motor vehicle accident in 1989 where he fractured his right forearm, six left ribs, and his

left hip.  He reported constant hip pain that gradually worsened with age.  His pain worsened with standing and lying down.  He reported that the severity of pain ranged from 6 to 10 out of 10. He also complained of constant right shoulder pain that worsened with use and that ranged in severity from 5 to 10 out of 10.  Plaintiff reported constant right forearm pain that worsened with extension. (Tr. 249).

Dr. Glover documented that Plaintiff was alert and oriented, and in no acute distress.  His blood pressure was 144/88, heart rate was 114, he did not hear a "finger rub" in his left ear, and his corrected vision was 20/25 in the right eye, 20/20 in the left eye, and 20/20 in both eyes.  Plaintiff was able to get on and off the examination table without difficulty. He had an antalgic gait but did not use an assistive device, negative bilateral straight leg raise (supine and sitting), negative Romberg, and he had normal SIS strength, sensation, and reflexes in all extremities.  In addition, Plaintiff had a full range of motion of his neck (except bending and rotation), back, shoulders, elbows, forearms, wrists, hands, fingers, hips, knees, ankles, and feet. (Tr. 249-50).

Dr. Glover noted that Plaintiff had tenderness to palpation in his right shoulder, right elbow, left hip, and lumbar spine (with muscle spasms) as well as pain with range of motion of the right shoulder, lumbar spine and left hip.  Based on

his clinical findings, Dr. Glover's diagnoses included chronic joint pain in the right shoulder, right forearm, and left hip, asthma, tobacco abuse, decreased left hearing, elevated blood pressure without a history of hypertension, and obesity. (Tr. 249-50).

On July 7, 2012, Plaintiff presented to the emergency department of Rockdale Medical Center complaining of pain in the arm, back, shoulder, and hip. Karin Vadelund, M.D., diagnosed shoulder bursitis and instructed Plaintiff to rest. She also instructed Plaintiff to follow-up with his orthopedist and pain management specialist. Dr. Vadelund prescribed Hydrocodone and Flexeril. (Tr. 269-71). Upon discharge. Plaintiff was given a work release to light duty without restrictions. (Tr. 267-68).

Plaintiff's last documented visit to the emergency room was to Newton Medical Center on November 24, 2012 for a complaint of an upper respiratory infection. No limitations were noted and he was released in satisfactory condition. (Tr. 274-80).

The State agency medical consultants, Charles Friedman, M.D. and Carol E. Kossman, M.D., opined that Plaintiff was able to perform light work with environmental limitations. (Tr. 65-66; 257-264).

### B.     Hearing Testimony

Plaintiff testified that he is unable to work because of numerous problems. He said that he had been in a bad automobile accident in 1989 and that he had severely fractured bones requiring multiple surgeries.  He said that he has chronic pain in his neck, right shoulder, back, left hip, left leg and knee that limits his ability to sit, stand, or walk very long. (Tr. 50-56).

With respect to daily activities, Plaintiff testified that his daughter, who lives one block away, does his cleaning and laundry.  He said that he is independent in performing hygiene tasks (but sits to put on pants), drives short distances daily to run his errands, is able to cook simple things in the microwave, uses a dishwasher, and partially cuts the grass. (Tr. 56-60).  Although he previously enjoyed reading, getting on the internet, and visiting with family daily, he no longer is able to socialize and has no hobbies. (Tr. 56).

Plaintiff testified that he must constantly alternate positions and is able to sit for 20 minutes, stand for 15-30 minutes, and walk 50 yards.  He said that he must lie down two-and-a-half hours each day due to the pain.  He said that he is unable to bend to retrieve something off the floor, reach behind him, or reach overhead due to the pain in his shoulder, neck, and back.  Plaintiff testified that he does not receive

medical treatment because he has no insurance, and that the last time he went to the emergency room was several months ago. He said that doctors prescribed Lortab and Oxycodone for his pain in the past; however, he no longer takes prescription medications due to lack of insurance, and over-the-counter medicines provide no relief. He further testified that he sleeps poorly due to the pain, and wakes up frequently during the night. (Tr.55-59).

A vocational expert (VE) testified that a person with the functional capacity assessed by the ALJ could not return to Plaintiff's past work; however, there were other jobs in the region and nation that such a person could perform. (Tr. 62).

**III.    The Sequential Evaluation Process**

Under the regulations promulgated by the Commissioner, a reviewer must follow a five-step sequential analysis when evaluating a disability claim. 20 C.F.R. § 404.1520(a). This analysis is as follows:

1. The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

2. The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is severe; if not, the claim is denied.

3. The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's

> Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

> 4. The ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work; if so, the claim is denied.

> 5. The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work that exists in the national economy.

20 C.F.R. § 404.1520(a)(4).

## IV. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: arthralgia, asthma, degenerative disc disease of the lumbar spine, and degenerative joint disease of the hips and right shoulder. (Tr. 23). The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 23-24).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that he must avoid even moderate exposure to dust, fumes, smoke, chemicals, and noxious gases as well as extreme heat and extreme cold. (Tr. 24). The ALJ determined Plaintiff was unable to perform his past work as a welder. (Tr. 27). The ALJ then relied on the testimony from the VE to

find that Plaintiff could perform jobs that exist in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled. (Tr. 2).

## V.   Standard of Review

The Court must review the Commissioner's decision to ensure that it is supported by substantial evidence and is based upon the proper legal standards. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is defined as "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Id. (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)). The Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" Id. (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004))(second alteration in original).

## VI.   Discussion

### A.   The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff first asserts that the ALJ improperly discredited his complaints of subjective symptoms. (Pl.'s Br. at 1).

A claimant may establish that he has a disability through his own testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223

(11th Cir. 1991). The ALJ must credit the claimant's testimony if the record contains

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Id. If the ALJ decides not to credit the claimant's testimony, the ALJ "must articulate explicit and adequate reasons" for that decision. Id. Some factors to consider include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications; and (5) any treatments, other than medication, that the claimant uses to relieve symptoms. 20 C.F.R. § 416.929(c)(3).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 25).

Plaintiff argues that the ALJ noted that he was discounting Plaintiff's statements for reasons stated in his decision, but did not specifically articulate what

those reasons were. Instead, he just summarized the objective evidence generally. (Doc. 12 at p. 9).

While the ALJ's opinion could have been better organized, the ALJ did discuss Plaintiff's testimony and articulate reasons why he concluded that it was not fully credible. The ALJ specifically discussed Plaintiff's testimony that he had to constantly alternate positions and lie down for more than two hours a day due to pain, but noted that the medical records did not document that Plaintiff had reported these needs to any treating or examining physicians. (Tr. 25, 27, 54-55, 163). Similarly, the ALJ noted that Plaintiff alleged difficulty sleeping due to pain, but he did not complain to his medical providers of sleeping problems, and that no treating source ever prescribed sleep medications. (Tr. 25, 27, 56). Inconsistencies between Plaintiff's allegations at the hearing, and the evidence in the record support the ALJ's decision to discount Plaintiff's credibility. See 20 C.F.R. § 416.929(c); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Furthermore, the ALJ's comments regarding various hospital records also support his credibility decision. The ALJ mentioned that hospital records in 2011,

11

when Plaintiff complained of low back pain after breaking up a dog fight, revealed that Plaintiff moved his torso very well and he had no abnormalities on examination except for a hand abrasion. Plaintiff was released without restrictions. (Tr. 26, 282-286). The ALJ also noted the emergency treatment records from Rockdale Medical Center in July 2012 for complaints of right shoulder pain. Significantly, those medical records documented that Plaintiff had a full range of motion in his neck, back, and extremities, and the attending physician released Plaintiff to work in three days without restrictions. (Tr. 26, 268-271). A physician's release of Plaintiff without restrictions provides further support for the ALJ's decision to discount Plaintiff's credibility. Cf. Cormier v. Comm'r of Soc. Sec., 522 F. App'x 468, 470 (11th Cir. 2013) (doctor's opinion that claimant could return to work, in part, supported ALJ's decision to discount credibility).

The ALJ also gave significant weight to the assessments of the State agency consultants because they were consistent with the objective medical evidence. The opinions of non-examining physicians lend support to an ALJ's decision. See Caces v. Comm'r, Soc. Sec. Admin., 560 F. App'x 936, 940 (11th Cir. 2014) (the ALJ may rely on a non-examining physician's report in denying disability benefits

when the report does not contradict information in an examining physician's report.).

In sum, the ALJ had substantial evidence to conclude that the record did not support Plaintiff's assertions that his pain was so severe, persistent and limiting that he was disabled from performing even light work.

### B.     The ALJ Did Not Err by Mechanically Applying Plaintiff's Age.

Next, Plaintiff contends that the ALJ committed reversible error in mechanically applying the age category of the "grids," that is, the Medical Vocational Guidelines set forth in 20 C.F.R. pt. 404 subpt. P, app. 2.  Plaintiff was approximately three months shy of his 55th birthday and the grids would have required finding him disabled as of that birthday based on his education, past work and RFC. (Pl.'s Br. at 10-14).  The agency "will not apply the age categories mechanically in a borderline situation.  If [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the agency] will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 416.963(b).

However, the ALJ did not rely exclusively on the grids to determine whether Plaintiff was disabled.  Instead, the ALJ relied on VE testimony, which makes any

13

alleged error in mechanically applying Plaintiff's age harmless. The Eleventh Circuit has held that if the ALJ does not rely exclusively on the grids in finding claimant not disabled, it is inconsequential whether his age should have been categorized differently. See <u>Miller v. Comm'r of Soc. §</u>, 241 F. App'x 631, 635 (11th Cir. 2007) (finding that where the ALJ relies on VE testimony that supported the existence of other jobs that claimant could perform, the ALJ need not determine whether the claimant was a person closely approaching advanced age). Therefore, Plaintiff's second argument is without merit.

## VI.   Conclusion

For the reasons discussed above, I **RECOMMEND** that the ALJ's decision be **AFFIRMED**.

**IT IS SO RECOMMENDED**, this 12th day of November, 2015.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)